U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**

2015 OCT -1 PM 4: 36

CLERK
BY ______
DEPUTY CLERK

MICHAEL MASTON, on behalf of himself and all others similarly situated,

Plaintiff,

v.

VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey Corporation,

Defendants.

Case No. 2:15-cv-213

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

The allegations herein are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to all other matters based on an investigation by counsel:[1]

## I. INTRODUCTION

1. Plaintiff Michael Maston ("Plaintiff") brings this class action against Volkswagen Group of America, Inc. ("Volkswagen" or "Defendant") for violations of various state statutes and common law duties, individually and on behalf of all persons in the United States who own, owned, lease or leased one or more of the following 2.0 liter diesel-engine vehicles: the 2009 to 2015 model year Volkswagen Jetta; the 2009 to 2014 model year Volkswagen Jetta Sportwagen; the 2010 to 2015 model year Volkswagen Golf; the 2012 to 2015 model year Volkswagen Beetle; the 2012 to 2015 model year Volkswagen Beetle Convertible; the 2012 to 2015 model

[1] Counsel's investigation includes an analysis of publicly available information, news articles, reports to federal regulators, other statistics and additional analysis.

year Volkswagen Passat; the 2015 model year Volkswagen Golf Sportwagen; and the 2010 to 2015 model year Audi A3 (collectively, the "Non-compliant Vehicles").

2. As detailed herein, Plaintiff and the Class suffered diminished market value and other damages related to the Non-compliant Vehicles purchased or leased by Plaintiff and the Classes (defined *infra*) as a direct result of Volkswagen omitting material information and issuing misleading statements about the emission standards of those vehicles. As disclosed in letters by the United States Environmental Protection Agency ("EPA") and Air Resource Board of the California Environmental Protection Agency ("Cal EPA"), dated September 18, 2015,[2] Volkswagen sold the Non-compliant Vehicles with a "defeat device" system to falsely indicate compliance with federal and California environmental laws when undergoing emission testing. In reality, the "defeat device" caused the Non-compliant Vehicles to emit, in some cases, up to 40 times the EPA allowable emission of nitrogen oxides ("NOx"). See Exhibit A at 3-4.

3. NOx is a highly toxic emission. In a 1997 report entitled *Nitrogen Oxides: Impacts on Public Health and the Environment*, the EPA characterizes nitrogen oxides as some of the most dangerous and harmful pollutants to human health and the natural environment.[3] The report describes how, *inter alia*, NOx pollutants make their way into the drinking water creating a health hazard for infants and how even short-term exposure to NOx pollutants is associated with a variety of acute and chronic health effects, especially in children. The report also lists the harmful effects of NOx pollutants on the environment. Given the toxic nature of NOx, the emission of the pollutant from vehicles, including the Non-compliant Vehicles, is regulated and subject to specific limitations. *See* 40 C.F.R. § 86.1811-04; *see also* Exhibit A at 2 ("Light-duty

---

2 The EPA and Cal EPA letters are attached hereto as Exhibits A and B, respectively.

3 *See* Office of Air and Radiation, *Nitrogen Oxides: Impacts on Public Health and the Environment*, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, (Aug., 1997), available at http://www3.epa.gov/ttn/oarpg/t1/reports/noxrept.pdf.

vehicles must satisfy emission standards for air pollutants, *including NOx*") (citing 40 C.F.R. § 86.1811-04) (emphasis added).

4. Compliance with emission regulations has been a cornerstone of Volkswagen's marketing campaigns for its diesel vehicles. For example, since 2008, Volkswagen has marketed its 2.0 liter diesel engine vehicles as having the "world's cleanest diesel engines"[4] that comply with the world's "most demanding emissions laws."[5] On Volkswagen's main website *VW.com*, Volkswagen states that, with respect to its TDI Clean Diesel vehicles,[6] "[Volkswagen's] commitment to making vehicles that are eco-conscious is part of bigger thinking."[7] In Volkswagen brochures, distributed to customers and the Class, Volkswagen has touted that its "Clean diesel vehicles meet the strictest EPA standards in the U.S. Plus, TDI technology helps reduce sooty emissions by up to 90%, giving you a fuel-efficient and eco-conscious vehicle." See Exhibit C.[8] The brochure identifies the Volkswagen Jetta TDI, the Volkswagen Jetta SportWagen TDI, the Volkswagen Golf TDI, the Volkswagen Passat TDI, and the Volkswagen Beetle TDI – each of which is now included in the Non-compliant Vehicles list.

5. Volkswagen's statements were blatantly false. As detailed in the EPA's Notice of Violation ("NOV") letter dated September 18, 2015, Volkswagen admitted to the EPA and the Cal EPA that it manufactured and installed sophisticated software in all of the Non-compliant

---

4 Environment, *Environmental Responsibility*, VW, available at http://update.vw.com/environment/index.htm (last visited Sept. 20, 2015).

5 About Audi, *Responsibility Report 2015*, AUDI USA, http://www.audiusa.com/content/dam/audiusa/Documents/Audi_Responsibility_Report_Web.pdf (last visited Sept. 20, 2015) (hereinafter, "Audi Responsibility Report").

6 References to "Clean Diesel" herein are to Volkswagen's marketing campaign for the Non-compliant Vehicles.

7 Features, *Clean Diesel*, VW, http://www.vw.com/features/clean-diesel/ (last visited Sept. 20, 2015).

8 Volkswagen Brochures, *TDI Volkswagen Brochure*, GALPIN VOLKSWAGEN, http://www.galpinvolkswagen.com/Media/Default/Page/brochures/pdf/tdi.pdf (last visited Sept. 20, 2015) (Exhibit C).

Vehicles, which detected when the vehicle was undergoing EPA emission standards compliance testing, in order to manipulate the emission results. See Exhibit A. Specifically, Volkswagen programmed the Noncompliant Vehicles to fully engage their emission control systems only when the Non-compliant Vehicles' software detected it was receiving various inputs associated with the EPA's emission standards compliance testing. See id. When Volkswagen's software detected the various inputs associated with the EPA's emission testing, it activated a pre-loaded program designed to produce EPA compliant (but false) emission results. See id. During non-testing conditions, the Non-compliant Vehicles ran a program that was designed to substantially reduce the effectiveness of their emission control system. See id. As a result of Volkswagen's actions, the Non-compliant Vehicles emitted NOx at 10 to 40 times above EPA compliant levels during real world driving conditions. See id.

6. The software Volkswagen created to manipulate the EPA's emission compliance tests is a "defeat device," as defined by the Clean Air Act ("CAA"). See 42 U.S.C. § 7522(a)(3)(B). A "defeat device" is designed to bypass, defeat, or render inoperative a vehicle's emission control system put in place to comply with CAA emission standards. See id. As stated by Cynthia Giles, Assistant Administrator for the Office of Enforcement and Compliance Assurance at the EPA, in the EPA's September 18, 2015 press release, announcing Volkswagen's wrongdoing: "Using a defeat device in cars to evade clean air standards is illegal and a threat to public health."[9]

7. The disclosures have revealed that approximately 482,000 Volkswagen diesel vehicles are in violation of EPA and Cal EPA emission standards. *See* EPA Press Release. More

---

[9] 2015 Press Releases, EPA, *California Notify Volkswagen of Clean Air Act Violations*, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, (Sept. 18, 2015), http://yosemite.epa.gov/opa/admpress.nsf/21b8983ffa5d0e4685257dd4006b85e2/dfc8e33b5ab162b985257ec40057813b!OpenDocument (hereinafter "EPA Press Release").

Volkswagen vehicles may be found to be in violation of EPA and Cal EPA regulations, as both the EPA and the Cal EPA are investigating whether other Volkswagen diesel vehicles violate federal and state emission standards. *See* Exhibit A at 5; Exhibit B at 4.

8.    Thus, Volkswagen marketed and sold the Non-compliant Vehicles as eco-friendly, emission compliant vehicles while knowing that each one of the Noncompliant Vehicles was designed to manipulate emission compliance tests. As noted by Tyson Slocum, director of the energy program at Public Citizen, a consumer advocacy group, "This is several steps beyond the violations that we've seen from other auto companies . . . . They appear to have designed a system with the ***intention to mislead consumers*** and the government."[10]

9.    The disclosure of the foregoing facts has resulted in economic harm to Plaintiff and the Classes.

## II. JURISDICTION AND VENUE

10.   This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because members of the proposed Plaintiff Class are citizens of states different from Defendant's home state, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

11.   Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District as Volkswagen conducts operations within this District.

## III. PARTIES

12.   Plaintiff Michael Maston resides in Ludlow, Vermont, and purchased a model year 2009 Volkswagen Jetta Sportwagen diesel.

---

[10]    Coral Davenport, *VW Is Said to Cheat on Diesel Emissions; U.S. to Order Big Recall*, THE NEW YORK TIMES, Sept. 18, 2015 (emphasis added).

13. Plaintiff selected and ultimately purchased their respective vehicles, in part, because of the "clean diesel" system, as represented through advertisements and representations made by Defendant. Specifically, prior to the vehicle purchase, Plaintiff viewed advertisements regarding the clean diesel technology. Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment as well as the efficiency and power/performance of the engine system. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the "defeat device" or that Defendant had purposefully falsified its certification of EPA compliance. Had Defendant disclosed that the purportedly clean diesel engine in Plaintiff's respective vehicles actually emitted up to 40 times the permitted levels of pollutants, including NOx, Plaintiff would not have purchased his vehicle, or would have paid less for his vehicle.

14. Plaintiff has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the clean diesel engine system, including but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, and diminished performance and value of their respective vehicles.

15. Neither Volkswagen nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the "defeat device" and/or defective design of the clean diesel engine prior to purchase.

16. Defendant Volkswagen is a corporation doing business throughout the United States and is organized under the laws of the State of New Jersey. At all times relevant to this action, Volkswagen manufactured, distributed, sold, leased, and warranted the Non-compliant Vehicles under the Volkswagen and Audi brand names throughout the United States. Volkswagen and/or its agents designed, manufactured, and installed the clean diesel engine

systems in the Non-compliant Vehicles, which included the "defeat device." Volkswagen also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Non-compliant Vehicles.

## IV. FACTUAL ALLEGATIONS

### A. Volkswagen Markets and Sells the Non-compliant Vehicles as some of the Cleanest Diesel Operating Vehicles in the World

17.     Volkswagen's advertisements assure consumers that its vehicles are equipped with the cleanest diesel engines in the market that are environmentally friendly and meet federal and state emission standards.

18.     For instance, in a press release dated October 29, 2008, Volkswagen claimed that the 2.0 liter diesel engine in its 2009 model-year Jetta, one of the Noncompliant Vehicles, "fulfills stringent Californian [sic] emissions standards."[11]

19.     Volkswagen's assurances are repeated on vehicle window labels, which provide information on a vehicle's: features, performance, warranty, price, and environmental impact. For instance, the Manufacturer's Suggested Retail Price ("MSRP") labels, placed on the windows of new cars include a green box titled "Environmental Performance." See Exhibit D.[12] This green box informs a potential buyer of the vehicle's impact on the environment. Vehicles receive a "Global Warming Score" and a "Smog Score." The scores are on a scale from 1 to 10, with 1 being the dirtiest and 10 being the "Cleanest." The rating and scores in the green box are administered and granted by the Cal EPA. On the MSRP label for a 2012 model year

---

[11]     News, *Volkswagen in Fuel Economy Guide 2009*, VOLKSWAGEN AG, (Oct. 29, 2008), http://www.volkswagenag.com/content/vwcorp/info_center/en/news/2008/10/vw_in_ fuel_economy_guide.html (last visited Sept. 20, 2015).
[12]     News Release, *New car label makes it easier to choose clean, efficient transportation*, CALIFORNIA ENVIRONMENTAL PROTECTION AGENCY AIR RESOURCES BOARD, (June 19, 2008), http://www.arb.ca.gov/newsrel/nr061908b.htm (Exhibit D).

Volkswagen Passat, one of the Non-compliant Vehicles, the green box shows that the car received a "Global Warming Score" of 8, or 3 points higher than average score of a new vehicle. *See* Exhibit E.[13] The green box also shows that the car received a "Smog Score" of 5, the average score for a new vehicle. *See id.* Both of the Environmental Performance scores for the 2012 model-year Volkswagen Passat were based on the fraudulent emission results the "defeat device" produced. In reality, as detailed in the EPA's letter, the 2012 model-year Volkswagen Passat, and all the other Non-compliant Vehicles, were emitting pollutants at up to 40 times the emission standard.

20. Volkswagen's advertisements echoed the eco-friendly theme it promoted for its purportedly clean diesel vehicles – including "***meeting the strictest EPA standards***":

*See* Exhibit C (emphasis added).

[13] 2012 Volkswagen Passat TDI SEL MSRP Sticker http://gtcarlot.com/data/Volkswagen/Passat/2012/51988435/Window%20Sticker-62697023.html (last visited Sept. 20, 2015).

21. Likewise, Volkswagen's marketing for its Audi line represented that "Audi pioneered TDI® clean diesel engines to deliver more torque, lower fuel consumption and reduce CO2 emissions, compared to equivalent gasoline engines. The result of this revolutionary engineering delivers remarkable performance, while achieving increased fuel economy."[14]

22. Thus, Volkswagen sought to create an image of its diesel cars as having the cleanest diesel engines, being environmentally friendly, and meeting federal and state emission regulations. As explained by the *Los Angeles Times*, the Volkswagen marketed the Non-compliant Vehicles as "clean diesels" that were "fun-to-drive alternatives to hybrids" and specifically marketed the vehicles to "eco-conscious buyers."[15]

23. Moreover, as set forth in the chart below, Volkswagen demanded significant premiums over gasoline-engine vehicles from consumers across each of the Non-compliant Vehicles:

| Clean Diesel Price Premium | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Model | Base | | | Mid-level | | | | Top-Level | |
| | Gas | Diesel | Premium | Gas | Diesel | Premium | Gas | Diesel | Premium |
| VW Jetta | $18,780 | $21,640 | **$2,860** | $22,325 | $24,075 | **$1,750** | $25,380 | $26,410 | **$1,030** |
| VW Jetta Sportwagen (2014) | $20,995 | $26,565 | **$5,570** | $24,885 | $26,565 | **$1,680** | NA | NA | **NA** |
| VW Golf | $20,175 | $22,575 | **$2,400** | $25,225 | $26,225 | **$1,000** | $27,425 | $28,425 | **$1,000** |
| VW Golf Sportwagen | $21,625 | $24,575 | **$2,950** | $27,025 | $28,025 | **$1,000** | $29,385 | $30,385 | **$1,000** |
| VW Beetle | $20,695 | $25,330 | **$4,635** | $23,605 | $28,525 | **$4,920** | $25,885 | NA | **NA** |
| VW Beetle Convertible | $25,595 | $29,675 | **$4,080** | $27,995 | $28,525 | **$530** | $30,425 | $31,125 | **$700** |
| VW Passat | $21,340 | $27,095 | **$5,755** | $26,280 | $29,125 | **$2,845** | $31,790 | $33,925 | **$2,135** |
| Audi A3 | $30,900 | $33,200 | **$2,300** | $33,600 | $35,900 | **$2,300** | $39,750 | $42,050 | **$2,300** |

**B. Volkswagen Designs and Implements a Software Program in the Non-compliant Vehicles to Manipulate Emission Tests**

24. Notwithstanding the eco-friendly image Volkswagen was touting to the market, between the 2009 and 2015 model years, Volkswagen designed and installed a software program,

---

14 http://www.audiusa.com/technology/efficiency/tdi, last visited Sept. 20, 2015.

15 Jerry Hirsch, *VW cheated on U.S. pollution tests for 'clean diesel'*, LOS ANGELES TIMES, Sept. 18, 2015.

the "defeat device," in the electronic control module ("ECM") of the Non-compliant Vehicles. *See* Exhibit A at 3.

25.     Under EPA regulations, Volkswagen was required to submit Certificate of Conformity ("COC") applications for the Non-compliant Vehicles which must identify any auxiliary emission control devices ("AECDs"), and justifications for use of the AECDs, such as the "defeat device" installed in the Non-compliant Vehicles. *See id.* at 2. Submission of the COC, gives the EPA the opportunity to evaluate the AECDs to determine whether their use is justified. *See id.* Each of the Noncompliant Vehicles contains an AECD, the "defeat device," that was not described in the application for the COC that purportedly covers the vehicle. *See id.* Vehicles equipped with "defeat devices" such as those installed by Volkswagen cannot be certified by the EPA, and manufacturers are prohibited from selling any vehicle that is not covered by an EPA-issued COC. *See id.* at 3.

26.     According to federal and state regulators, the "defeat device" was able to detect when the Recalled Vehicle was undergoing EPA emission standards compliance testing based on certain inputs the vehicle received during the test. *See id.* The "defeat device" would then activate the "dyno calibration" program which Volkswagen had pre-loaded into the vehicle's ECM. *See id.* at 4. The "dyno calibration" program fully engaged the vehicle's emission control system so that the vehicle produced EPA compliant emission results. *See id.*

27.     At all other times, during real world driving conditions, the "defeat device" would run a separate program which Volkswagen referred to as the "road calibration" program. *See id.* The "road calibration" emitted ***up to 40 times*** the pollutants allowed under federal and state emission standards. *See id.*

**C. Volkswagen Conceals the "Defeat Device" so Effectively that it
Escapes the Attention of Regulators and Consumers for Six years**

28.     Volkswagen intentionally concealed the existence of the "defeat device" from consumers and federal and state regulators for years.

29.     Volkswagen's concealment of the "defeat device" was intended to deceive consumers into believing they were purchasing one of the cleanest diesel cars on the market with stated performance features. Indeed, "[e]xperts in automotive technology said that disengaging the pollution controls on a diesel-fueled car can yield better performance, including increased torque and acceleration."[16] As explained by Drew Kodjak, executive director of the International Council on Clean Transportation, "[w]hen the pollution controls are functioning on these vehicles, there's a trade-off between performance and emissions . . . . This is cutting corners."[17] Corroborating Mr. Kodjak, other market professionals noted that "[i]t had been surprising that Volkswagen diesel models were able to get impressive horsepower output and fuel economy performance using less costly pollution control technology than employed in some other automakers' engines . . . . The software workaround may have enabled the performance without the expected pollution controls."[18]

30.     Plaintiff and the Classes reasonably relied on Volkswagen's misrepresentations in purchasing the Non-compliant Vehicles or paying a premium for an emission compliant vehicle with the represented performance specifications.

---

[16]     Coral Davenport, *VW Is Said to Cheat on Diesel Emissions; U.S. to Order Big Recall*, THE NEW YORK TIMES, Sept. 18, 2015.
[17]     *Id.*
[18]     Jeff Plungis, *Volkswagen Admits to Cheating on U.S. Emissions Tests*, BLOOMBERG, Sept. 18, 2015.

**D. Volkswagen Admits the Truth to the EPA About the "Defeat Device" in the Non-compliant Vehicles**

31.     On September 3, 2015, Volkswagen admitted to EPA and Cal EPA staff that the Non-compliant Vehicles were designed and manufactured with a "defeat device" that bypassed, defeated, or rendered inoperative elements of the Noncompliant Vehicles' emission control system. *See* Exhibit B.

32.     Volkswagen's admission was more than a year in the making. The EPA was first alerted of emissions problems in the Non-compliant Vehicles by the West Virginia University's Center for Alternative Fuels, Engines & Emissions ("WVU Center") in May 2014. *See* Exhibit A at 4. The WVU Center determined that testing on a 2012 model year diesel Volkswagen Jetta and 2013 model year diesel Volkswagen Passat, both of which are on the Non-compliant Vehicles list, yielded significantly higher emissions than reported. *See id.* Over the course of 2014, Volkswagen reassured both the EPA and the Cal EPA that its Non-compliant Vehicles were operating within federal and state emission regulations, and that the higher emission results could be attributed to various technical issues and unexpected real world conditions. *See id.*

33.     In December 2014, Volkswagen issued a voluntary recall of certain of the Non-compliant Vehicles in order to fix the issues causing the higher emission results. *See id.* On May 6, 2015 the EPA and the Cal EPA subsequently tested the vehicles Volkswagen alleged it fixed in the December 2014 voluntary recall. *See* Exhibit B at 3. The subsequent testing revealed that Volkswagen had not fixed the emission issue and the vehicles Volkswagen allegedly fixed in the voluntary recall, failed the emission tests. *See id.* The Cal EPA shared the results of the emission tests with Volkswagen on July 8, 2015. *See id.*

34. Following this latest failure, the EPA and Cal EPA threatened to withhold certifications of conformity for the 2016 model year diesel vehicles, effectively suspending vehicle sales of these vehicles unless Volkswagen corrected the emission issue. *See* Exhibit A at 4.

35. After the regulators' threat, Volkswagen finally admitted to the EPA and the Cal EPA, on September 3, 2015, that it had designed and manufactured the Non-compliant Vehicles with a "defeat device." *See* Exhibit B.

**E. The "Defeat Device" and its Effect on Volkswagen's Reputation as Having Clean Diesel Vehicles Will Adversely Affect the Classes**

36. Vehicles are purchased or leased under the reasonable assumption that they comply with federal and state emission standards and performance specifications as advertised. Moreover, vehicle owners (and lessees) have a reasonable expectation that car manufacturers will abide by federal and state emission standards and federal, state and common law obligations to affirmatively disclose known defects, including the "defeat device," in a timely manner. This did not happen with respect to the Noncompliant Vehicles.

37. As a result of Volkswagen's admitted use of "defeat devices" in the Noncompliant Vehicles, devices which artificially enhanced road performance, all purchasers of the Non-compliant Vehicles overpaid for their cars at the time of purchase.

38. As news of the Non-compliant Vehicles' failure to follow federal and state emission standards surfaced on September 18, 2015, the value of Volkswagen's vehicles had diminished and will continue to do so as purchasers, owners and persons leasing these vehicles are encumbered with the stigma of operating a high polluting vehicle designed to evade emission testing. As noted in a September 18, 2015 article in the *Los Angeles Times*, "people buy diesel

cars from Volkswagen because they feel they are clean diesel cars, and they are told they are clean diesel cars . . . . I don't want to be spewing noxious gases into the environment."[19]

39. These reports, along with the reports that are to follow in the coming days and weeks, have materially negatively impacted the value of the Non-compliant Vehicles, including Plaintiff's vehicle, and will continue to do so in the future. Indeed, an analyst for Kelly Blue Book described the disclosures as "pretty ugly" and noted that "Volkswagen has far outstripped everyone else in selling diesel cars. This challenges everything they've been saying about those vehicles."[20] Moreover, *Consumer Reports* has suspended its "recommended" rating for the Volkswagen Jetta and Passat diesels.[21] According to *Consumer Reports*, "These recommendations will be suspended until Consumer Reports can re-test these vehicles with a recall repair performed. Once the emissions systems are functioning properly, we will assess whether the repair has adversely affected performance or fuel economy."[22]

## V. TOLLING OF THE STATUTE OF LIMITATIONS

### A. Discovery Rule Tolling

40. Class Members could not reasonably discover Volkswagen's deception with respect to its Clean Diesel marketing campaign and its use of a "defeat device" in the Non-compliant Vehicles prior to the disclosure of the EPA and Cal EPA letters.

41. In fact, it took investigations from three separate investigatory entities, including two environmental regulators, to discover Volkswagen's "defeat device." *See* Exhibit A at 4

---

[19] Samantha Masunga, *Volkswagen customers sound off on Twitter,* THE LOS ANGELES TIMES, Sept. 18, 2015, *available at* http://www.latimes.com/business/la-fivw-reaction-20150918-htmlstory.html.

[20] Jerry Hirsch, *VW cheated on U.S. pollution tests for 'clean diesel'*, LOS ANGELES TIMES, Sept. 18, 2015.

[21] Jon Linkov, *VW, Audi Cited by EPA for Cheating on Diesel Emissions Tests*, Consumer Reports, Sept. 21, 2015, *available at* http://www.consumerreports.org/cro/cars/vw--audi-cited-by-epa-for-cheating-ondiesel-emissions-tests.

[22] *Id.*

(referring to the WVU Center, the EPA, and the Cal EPA). As detailed in the Cal EPA's letter, the Cal EPA was required to use a sophisticated over-the-road Portable Emission Measurement System ("PEMS") and then develop a special dynamometer cycle to determine why the Non-compliant Vehicles were failing the emission tests when tested for normal driving conditions. *See* Exhibit B. The difficulty of detecting the "defeat device" and the sophistication of the "defeat device," described herein, establish Volkswagen' intention of hiding its actions from both regulators and consumers.

42. Within the time period of any applicable statutes of limitation, Plaintiff and members of the proposed Classes could not have discovered through the exercise of reasonable diligence that Volkswagen was concealing the conduct complained of herein.

43. Plaintiff and other Class members did not discover and did not know of any facts that would have caused a reasonable person to suspect that Volkswagen did not report information within its knowledge concerning the use of a "defeat device" in the Non-compliant Vehicles to federal and state regulators, its dealerships, or consumers. A reasonable and diligent investigation would not have disclosed that Volkswagen possessed information, which Volkswagen chose to conceal, about its "defeat device" scheme to evade emission standards. Plaintiff learned of the "defeat device" installed on their respective Volkswagen vehicles shortly after news of Volkswagen's actions made headlines on the national media in September 2015.

44. For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect as to all the Non-compliant Vehicles.

**B. Fraudulent Concealment Tolling**

45. Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged herein, have tolled all applicable statutes of limitations.

46.    Volkswagen falsely represented that its vehicles: complied with and exceeded federal and state emission standards; emitted NOx and other pollutants at levels in compliance or below federal and state standards; and were eco-conscious.

**C. Tolling by Estoppel**

47.    Volkswagen was under a continuous duty to disclose to Plaintiff and the Classes the true character, quality, and nature of the Non-compliant Vehicles emissions, emission control system, and the compliance of the emission control system with applicable federal and state law.

48.    Volkswagen knowingly, affirmatively, and actively concealed the true nature, quality, and character of the Non-compliant Vehicles' emissions and emission control system.

49.    At all times, Volkswagen was under a continuous duty to disclose to Plaintiff and the Classes that it engaged in the fraudulent actions detailed herein to evade federal and state emission and clean air standards and to artificially enhance the road performance of the Non-compliant Vehicles.

50.    Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

**VI. CLASS ACTION ALLEGATIONS**

51.    Plaintiff bring this action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and/or (b)(3) on behalf of the following Classes: (i) All persons and entities that purchased, leased or own the Non-compliant Vehicles in the United States (the "Nationwide Class"); and (ii) All persons or entities that purchased, leased or own the Non-compliant Vehicles in the states of Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Jersey,

New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin and Wyoming (the "Consumer Protection Statute Class").

52.     Excluded from the Classes are individuals who have personal injury claims resulting from the "defeat device" in a Recalled Vehicle. Also excluded from the Classes, are Volkswagen and its parent, subsidiaries and affiliates. Plaintiff reserves the right to revise the definition of the Classes based upon subsequently discovered information.

53.     The Classes are so numerous that joinder of all members is impracticable.

54.     A Class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

55.     Plaintiff's claims are typical of the claims of the Classes. As alleged herein, Plaintiff and members of the Classes all sustained damages arising out of the Defendant's same course of unlawful conduct.

56.     There are questions of law and fact common to the Classes that predominate over individual issues, including but not limited to the following:

- Whether Volkswagen sold the Non-compliant Vehicles with a "defeat device";

- Whether Volkswagen sold the Non-compliant Vehicles with a "defeat device" in order to circumvent federal and state clean air statutes and emission regulations;

- Whether Volkswagen's use of the "defeat device" manipulated the performance and/or fuel efficiency of the Non-compliant Vehicles;

- Whether Volkswagen's misrepresentations and omissions concerning the use of a "defeat device" were likely to deceive a reasonable person;

- Whether Volkswagen's Clean Diesel marketing campaign included false and misleading statements by failing to disclose Volkswagen's use of a "defeat device" in the Non-compliant Vehicles;

- Whether Volkswagen's Clean Diesel marketing campaign was likely to deceive a reasonable person;

- Whether Volkswagen's Clean Diesel marketing campaign included false and misleading statements by claiming that the Non-compliant Vehicles were environmentally friendly and/or failing to disclose that the Noncompliant Vehicles fail to meet federal and state emission standards;

- Whether a reasonable customer would pay less for a Non-compliant Vehicle if the use of a "defeat device" was disclosed at the time of purchase or lease;

- Whether a reasonable customer would pay less for a Non-compliant Vehicle that did not comply with federal and state clean air statutes and emission regulations;

- Whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted; and

- Whether injunctive relief enjoining the reoccurrence of Defendant's conduct and/or declaratory relief that such conduct is unlawful, is warranted.

57.     The interest of Class members in individually controlling the prosecution of separate actions is theoretical and not practical. The Classes have a high degree of similarity and are cohesive. Moreover, individual litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the courts. Plaintiff anticipates no difficulty in the management of this matter as a class action.

58. Class action status is also warranted under Rule 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

59. Class action status is also warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

60. Plaintiff is an adequate representative who has selected highly competent counsel who is fully qualified to represent the Classes. Plaintiff intends to prosecute this action vigorously.

## VII. CLAIMS FOR RELIEF

### FIRST CLAIM
**Common Law Breach of Contract**
**On behalf of the Nationwide Class**

61. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62. Volkswagen breached contractual obligations by tendering to Plaintiff and the Class vehicles equipped with a "defeat device" designed to reduce the effectiveness of the vehicle's emission control system, causing the Non-compliant Vehicles to emit pollutants at up to 40 times the EPA emission standards.

63. The "defeat device" present in the Non-compliant Vehicles did not constitute merely a minor breach, as the existence of the "defeat devices" caused the Non-compliant Vehicles to emit pollutants at a far higher rate than Volkswagen warranted and in violation of

federal and state emission standards. As such, Plaintiff and the Class would not have purchased or leased the Non-compliant Vehicles at the price they paid, or at all, had they known of the presence of the "defeat device."

64. As a direct and proximate result of Defendant's breach of contract or warranty, Plaintiff and the Class have suffered damages.

**SECOND CLAIM**
**Fraudulent Misrepresentation & Fraudulent Concealment**
**On behalf of the Nationwide Class**

65. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

66. As described above, Defendant made material omissions and affirmative misrepresentations regarding the Non-compliant Vehicles.

67. Defendant knew these representations were false when made.

68. The vehicles Plaintiff and the Class purchased or leased were defective because the vehicles were subject to a "defeat device" that would reduce the effectiveness of the Non-compliant Vehicles' emission control system as well as their road performance.

69. Defendant had a duty to disclose that these vehicles were defective in that the vehicles were subject to a "defeat device" that would reduce the effectiveness of the vehicles' emission control system.

70. The aforementioned concealment was material because if it had been disclosed Plaintiff and the Class would not have purchased or leased the vehicles at the price they paid, or would not have purchased or leased the vehicles at all.

71. The aforementioned representations were material because they were facts that would typically be relied upon by a person purchasing or leasing a motor vehicle – including

vehicles sold under a Clean Diesel marketing campaign. Defendant knew or recklessly disregarded that its representations as to the Noncompliant Vehicles were false and or omitted material information. Defendant intentionally made the false statements in order to induce Plaintiff and the Class to purchase or lease the Non-compliant Vehicles.

72. Plaintiff and the Class relied upon Volkswagen's representations and omissions in purchasing or leasing the Non-compliant Vehicles.

73. As a result of their reliance, Plaintiff and the Class have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

74. Defendant's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff. Plaintiff and the Class are therefore entitled to an award of punitive damages.

**THIRD CLAIM**
**Unjust Enrichment,**
**On behalf of the Nationwide Class**

75. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

76. Plaintiff and the Class paid the value of vehicles that have fully operational emission control systems that comply with federal and state emission standards, would not be compromised by the need for repairs, and could be legally operated, but were provided with vehicles that are defective, needed repairs, and could not be legally operated.

77. As such, Plaintiff and the Class conferred a windfall upon Volkswagen, which knew of the windfall and has unjustly retained such benefits.

78. As a direct and proximate result of Volkswagen's unjust enrichment, Plaintiff and the Class have suffered and continue to suffer various damages, including, but not limited to, restitution of all amounts by which Defendant was enriched through its misconduct.

**FOURTH CLAIM**
**Violations of State Consumer Protection and Unfair Competition Statutes**
**On behalf of the Consumer Protection Statute Class**

79. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

80. Defendant engaged in unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices with respect to the sale of the Noncompliant Vehicles in violation of the following state consumer protection and unfair competition statutes.

81. Defendant has violated Alaska Stat. § 45-50-471 *et seq.*

82. Defendant has violated Ariz. Rev. Stat. § 44-1521 *et seq.*

83. Defendant has violated Arkansas Code § 4-88-101 *et seq.*

84. Defendant has violated Cal. Civ. Code § 1770 *et seq.*, Cal. Bus. & Prof. Code § 17200 *et seq.*, and Cal. Bus. & Prof. Code § 17070.

85. Defendant has violated Colo. Rev. Stat. § 6-1-101 *et seq.*

86. Defendant has violated Conn. Gen. Stat. § 42-110A, *et seq.*

87. Defendant has violated 6 Del. Code § 2513 *et seq.* and 6 Del. Code § 2532 *et seq.*

88. Defendant has violated D.C. Code Ann. § 28-3901 *et seq.*

89. Defendant has violated Florida Stat. § 501.201 *et seq.*

90. Defendant has violated Ga. Code Ann. § 10-1-370 *et seq.*

91. Defendant has violated Haw. Rev. Stat. Ann. § 481A-3.

92. Defendant has violated Idaho Code § 48-601 *et seq*.

93. Defendant has violated 815 Ill. Comp. Stat. 505/1 *et seq*. and 815 Ill. Comp. Stat. 510/1 *et seq*.

94. Defendant has violated Ind. Code § 24-5-0.5-3.

95. Defendant has violated Iowa Code § 714H.1 *et seq*.

96. Defendant has violated Kan. Stat. Ann. § 50-623 *et seq*.

97. Defendant has violated Ky. Rev. Stat. § 367.110 *et seq*.

98. Defendant has violated Me. Rev. Stat. Ann. Tit. 5 § 205-A *et seq*.

99. Defendant has violated Md. Code Com. Law § 13-101 *et seq*.

100. Defendant has violated Mass. Gen. Laws chapter 93A § 1 *et seq*.

101. Defendant has violated Mich. Comp. Laws § 445.901.

102. Defendant has violated Minn. Stat. § 325F.69 *et seq*. and Minn. Stat. § 325D.43 *et seq*.

103. Defendant has violated Mo. Ann. Stat. 407.020.

104. Defendant has violated Neb. Rev. Stat. § 87-302 and Neb. Rev. Stat. § 59-1601 *et seq*.

105. Defendant has violated Nev. Rev. Stat. § 598.0903 *et seq*.

106. Defendant has violated New Hampshire Rev. Stat. § 358-A:1 *et seq*.

107. Defendant has violated N.J. Stat. Ann. § 56:8-1, *et seq*.

108. Defendant has violated New Mexico Stat. Ann. § 57-12-1 *et seq*.

109. Defendant has violated N.Y. Gen. Bus. Law § 349 *et seq*.

110. Defendant has violated North Carolina Gen. Stat. § 75-1.1 *et seq*.

111. Defendant has violated N.D. Cent. Code § 51-15-02.

112. Defendant has violated Ohio Rev. Code Ann. § 1345.01 *et seq*. and Ohio Rev. Code Ann. § 4165.01 *et seq.*

113. Defendant has violated Okla. Stat. Tit. 15 § 751 *et seq*. and 78 Okla. Stat. Ann. § 51 *et seq*.

114. Defendant has violated Or. Rev. Stat. § 646.605 *et seq*.

115. Defendant has violated 73 Pa. Stat. § 201-1 *et seq.*

116. Defendant has violated Rhode Island Gen. Laws § 6-13.1-1 *et seq*.

117. Defendant has violated S.D. Codified Laws § 37-24-6 *et seq*.

118. Defendant has violated Tex. Bus. & Com. Code § 17.41 *et seq*.

119. Defendant has violated Utah Code Ann. § 13-11-1 *et seq.*

120. Defendant has violated Vt. Stat. Ann. Tit. 9, § 2451 *et seq*.

121. Defendant has violated Va. Code Ann. 59.1-200 *et seq.*

122. Defendant has violated Rev. Code Wash. Ann. § 19.86.010 *et seq.*

123. Defendant has violated W. Va. Code § 46A-1-101 *et seq*.

124. Defendant has violated Wisc. Stat. § 100.18 *et seq.*

125. Defendant has violated Wyo. Stat. § 45-12-105 *et seq.*

126. Defendant's misrepresentations and omissions regarding the emission compliance of its vehicles as set forth in this Complaint were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

127. Defendant's intentional and purposeful acts, described above, were intended to and did cause Plaintiff and the Class to pay artificially inflated prices for Non-Compliant Vehicles purchased or leased in the states (and the District of Columbia) listed above.

128. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and Class members have been injured in their business and property in that they paid more for the Non-compliant Vehicles than they otherwise would have paid in the absence of Defendant's unlawful conduct.

129. All of the wrongful conduct alleged herein occurred in the conduct of Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct that was perpetrated nationwide.

130. Plaintiff and Class members are therefore entitled to all appropriate relief as provided for by the laws of the states listed above, including but not limited to, actual damages, injunctive relief, attorneys' fees, and equitable relief, such as restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendant as a result of its unlawful conduct.

**VIII. PRAYER FOR RELIEF**

131. WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendant and in favor of Plaintiff and the Classes and award the following relief:

A. That this action be certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as the representative of the Classes and Plaintiff's counsel as counsel for the Classes;

B. That the conduct alleged herein be declared, adjudged and decreed to be unlawful;

C. Compensatory, consequential, and general damages in an amount to be determined at trial;

D. Costs and disbursements of the action;

E. Restitution and/or disgorgement of Defendant's ill-gotten gains, and the imposition of an equitable constructive trust over all such amounts for the benefit of the Classes;

F. Pre- and post-judgment interest;

G. Reasonable attorneys' fees;

H. That Defendant be enjoined from the conduct challenged herein;

I. Such monetary, injunctive other relief to each of the subclasses that is provided for by the state statutes pursuant to each Count alleged; and

J. Such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all claims in this action.

Dated: ~~September __, 2015~~ October 1, 2015

**GRAVEL & SHEA PC**

By: /s/ Norman Williams
Norman Williams
76 St. Paul Street, 7th Floor
Burlington, VT 05402
Telephone: (802) 658-0220
Facsimile: (802) 658-1456

**KIRBY MCINERNEY LLP**
Mark A. Strauss
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 371-6600
Facsimile: (212) 751-2540

**SULLIVAN & WORCHESTER LLP**
Jonathan G. Kortmansky
1633 Broadway
New York, NY 10019
Telephone: (212) 660-3044
Facsimile: (212) 660-3001

*Counsel for Plaintiff*